UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TAKSHIA NEELY O/B/O A.N., a minor, | Case No. 18-11367 |
| Plaintiff, | Mark A. Goldsmith<br>United States District Judge |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Stephanie Dawkins Davis<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)**

**I.     PROCEDURAL HISTORY**

   A.   Proceedings in this Court

On May 1, 2018, plaintiff, mother of A.N., a minor child, filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark A. Goldsmith referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for supplemental security income childhood disability benefits. (Dkt. 2). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 11, 12).

1

B.    Administrative Proceedings

Plaintiff filed an application for supplemental security income childhood disability benefits on November 20, 2014, on behalf of her minor child, A.N., alleging disability beginning on April 1, 2005. (Tr. 15).[1] The claim was initially disapproved by the Commissioner on September 1, 2015. Plaintiff requested a hearing and on December 9, 2016, plaintiff and A.N. appeared, with counsel, before Administrative Law Judge ("ALJ") Jeanne M. VanderHeide, who considered the case *de novo*. (Tr. 15-27). In a decision dated February 2, 2017, the ALJ found that plaintiff was not disabled. (Tr. 27). Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 7, 2018, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7. All references to the same are identified as "Tr."

## II. ALJ FINDINGS

The claimant, A.N., born June 29, 2000, was an adolescent on November 20, 2014, the date the application was filed, and was still an adolescent on the date of the decision. (Tr. 18). The claim for disability on A.N.'s behalf is based on blindness in her left eye and hearing impairment in her left ear. (Tr. 131).

At Step I of the three-step sequential evaluation process, the ALJ found that A.N. had not engaged in substantial gainful activity since November 20, 2014, the application date. (Tr. 18). At Step II, the ALJ found that the claimant had blindness, left eye; hearing loss, left ear; learning disability; and dysthymic disorder, which she found to be severe impairments that caused more than minimal functional limitations. (*Id.*) At Step III, the ALJ found that A.N. did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings. (Tr. 18). In denying the claim, the ALJ evaluated A.N.'s degree of limitation in each of the six functional equivalence domains and concluded that she did not have "marked" or "extreme" limitations in any of the six broad functional domains and thus did not functionally equal a listed impairment. (Tr. 19-27). The ALJ thus determined that A.N. was not disabled from November 20, 2014, through the date of the decision. (Tr. 27).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant finds no relief during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B. <u>Legal Standards – Eligibility for SSI Childhood Disability Benefits</u>

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three-step sequential evaluation process:

> 1. A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment. 20 C.F.R. § 416.926a(a). The SSA will consider how a child functions in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

    3.      Interacting and relating with others;

    4.      Moving about and manipulating objects;

    5.      Caring for yourself; and

    6.      Health and physical-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[1] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

    C.    <u>Analysis and Conclusions</u>

        1.    Review of Mental Impairments

Plaintiff argues that this case should be remanded for a psychological or psychiatric consultant's evaluation in light of evidence of a mental impairment pursuant to 20 C.F.R. § 404.1503(e). However, as this case is a supplemental security income case, plaintiff's argument is more properly one under the parallel and identically-worded provision, § 416.903(e) only, as effective on the date of the ALJ's decision.

---

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

In the view of the undersigned, plaintiff misinterprets 20 C.F.R. § 416.903(e), which applies only to initial determinations finding mental impairments. That is, this regulation requires a psychiatrist or psychologist to review the record before the Commissioner can make the *initial decision* on a benefits claim and this regulation is unrelated to consultative examinations after that decision and before the hearing. *Moon v. Comm'r of Soc. Sec.*, 2018 WL 1406840 (E.D. Mich. Mar. 21, 2018); *Hudson v. Comm'r of Soc. Sec.*, 2017 WL 1030216 (E.D. Mich. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1021072 (E.D. Mich. Mar. 16, 2017); *Ford v. Comm'r of Soc. Sec.*, 2017 WL 9477652, at *4 (E.D. Mich. Jan. 31, 2017).[2]

Nothing in plaintiff's application on behalf of her child would have suggested the need for a review by a psychologist or psychiatrist. Plaintiff identified blindness in the left eye and hearing impairment in the left ear as A.N.'s disabling medical conditions, but no mental impairments. (Tr. 131). Plaintiff indicated that A.N. had not been tested for behavioral or learning problems and was not in special education in April 2015, before the initial review. (Tr. 133). In November 2015, after the initial review, A.N. underwent cognitive testing, which

---

[2] Plaintiff's counsel was counsel in all three of the cited cases. Thus, plaintiff's counsel was well-aware that this argument is legally untenable before bringing the argument to the Court in this instance. This raises the question whether plaintiff's counsel raised the argument in good faith.

9

revealed scores in the normative low average range. (Tr. 249-50). It was not until March 2016 that A.N. was diagnosed with dysthymic disorder (Tr. 299), again after the initial review took place. In short, since the regulation does not require the ALJ to have a psychologist or psychiatrist evaluate a mental condition, and there is no indication that there should have been an evaluation performed at the initial review stage, plaintiff's argument should fail.

        2.      Functional Equivalence

Plaintiff does not appear to object to the ALJ's conclusion that the claimant's impairments did not meet or medically equal the Listings. Rather, the appeal is related to the ALJ's assessment of whether the claimant's impairments functionally equaled an impairment in the Listings, as assessed under the six domains found in 20 C.F.R. § 416.926a(a). Plaintiff must show that the ALJ's decision that A.N. suffered from less than marked limitations in two of the six domains is not supported by substantial evidence, or that the ALJ's decision that claimant's limitations in one of the six domains was not extreme is not supported by the substantial evidence. Here, plaintiff only objects to the ALJ's decision regarding one of the six domains: acquiring and using information.

The acquiring and using information domain considers how well a child acquires or learns information, and how well the child uses the information

learned. 20 C.F.R. § 416.926a(g).[3] The regulations provide that an adolescent (age 12 to attainment of age 18) without an impairment should be able to continue to demonstrate what she has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). The adolescent should also be able to use what she has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). She should be able to comprehend and express both simple and complex ideas, using increasingly complex language in learning and daily living situations (e.g., to obtain and convey information and ideas). She should also learn to apply these skills in practical ways that will help her enter the workplace after she finishes school (e.g.; carrying out instructions, preparing a job application, or being interviewed by a potential employer).

Social Security regulation 20 C.F.R. § 416.926a(g)(3) gives some examples of limited functioning in this domain that children of different ages might have. The examples are not age-specific; rather, they cover a range of ages and developmental periods. In addition, according to the ALJ, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty adolescents could have in acquiring and using information are: (i) does not demonstrate understanding of words about space, size, or time;

---

[3] As effective on the date of the decision.

(e.g. in/under, big/little, morning/night), (ii) cannot rhyme words or sounds in words; (iii) has difficulty recalling important things she learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; and (v) talks in only short, simple sentences and has difficulty explaining what she means.

According to plaintiff, A.N.'s impairments are functionally equivalent to a Listing in this domain. A.N. is in the tenth grade but is performing at a reading level of 1.9, a math level of 4.2, and a written language level of 4.0. (Dkt. 11, at p. 9). Plaintiff says the ALJ did not consider the level at which A.N. was performing. A.N. also has problems comprehending oral instructions, understanding school and content vocabulary, and reading and comprehending written material. She has "obvious problems" completing work assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. According to plaintiff, A.N. "has a specific learning disability that causes problems in basic reading skills, mathematics calculation, mathematics problem solving, and reading comprehension." Further, she has failing grades in Algebra, English, Geometry, Physics, World History & Geography, Junior ROTC, Biology, Pre-Algebra, and United States History. Plaintiff concludes that it is clear that an individual who performs so low in comparison with their grade level meets the definition of "extreme" limitation. (*Id.* at p. 10).

12

Conversely, the Commissioner argues that the ALJ reasonably found that A.N. had only a "marked" limitation in this domain. The ALJ observed that A.N. could complete tasks relevant to this domain. Further, the teacher questionnaires indicated some "serious" problems relating to acquiring and using information, but not "very serious" problems. (Dkt. 12, at p. 7). Thus, according to the Commissioner, the teacher's opinion supports marked limitation, but not extreme limitation. As to plaintiff's argument about A.N.'s level of school performance and testing, the Commissioner asserts that this is plaintiff's attempt to have the Court reweigh the evidence. (*Id.* at p. 8). Moreover, the evidence does not support extreme limitation. While she was performing below the tenth-grade level, the Commissioner points out that overall test scores were in the normative low average range. (*Id.* at p. 9). And, there is no indication that her scores fell three standard deviations below the norm, which would be expected in the case of an extreme limitation. (*Id.*) (citing 20 C.F.R. § 416.926a(e)(3)(i)). Additionally, A.N.'s teacher considered her below-grade-level scores but found only "serious," not "very serious" problems acquiring and using information.

The undersigned agrees with the Commissioner that the ALJ's determination is supported by substantial evidence. The applicable regulation defines "marked limitation" and "extreme limitation." 20 C.F.R. § 416.926a(e)(2 & 3)(i). A marked limitation in a domain would interfere seriously with the claimant's ability

13

to independently initiate, sustain, or complete activities. An extreme limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

At the request of her mother, A.N. underwent a psychological examination on November 16, 2015. The psychologist administered psychological testing, interviewed both plaintiff and A.N., and observed A.N. in the classroom. A.N. was observed in art class working on a basket weaving project. She engaged in a brief conversation with another student, appeared relaxed and comfortable, and executed the tasks according to her teacher's instruction. (Tr. 245). The psychologist reviewed A.N.'s teacher, C. Fey's, feedback. The teacher listed A.N.'s strengths as asking for help and having good relationships with students. A.N.'s most challenging behaviors were tardiness, disengagement, and not working. The teacher noted that she is usually engaged for part of the class, but never the whole time. (Tr. 253). She exhibits positive behaviors during teacher-directed activities, like taking notes, and negative behaviors in less structured settings. During formal testing with the psychologist, A.N. did not need repetition, clarification, or emphasis for verbal responses; she was persistent with challenging tasks; and only minimal levels of frustration or anxiety were noted. (Tr. 246). The results of

testing were as follows: Her overall score was in the normative low average range, with strengths in the use of oral vocabulary, processing speed, and phonological processing, and "normative weaknesses" with cognitive abilities that "tap her short term memory and narrow abilities of fluid reasoning and problem solving." (Tr. 249). Her deficits were suggestive of a student with an ongoing learning disability. (Tr. 250). The psychologist recommended considering social work services for additional support at school.

In a January 2016 eligibility recommendation for special education programming, it was noted that A.N. had suspected disability in basic reading skills, mathematics calculations and problem-solving, and reading comprehension. (Tr. 255, 257). In her individualized education program (IEP) team report completed January 12, 2016, A.N. was noted to be engaged in conversation and expressed her need for higher academic achievement. (Tr. 260). She appeared to be self-directed and had an adequate level of motivation to meet her academic challenges. A member of school personnel completed a "Present Level of Academic Achievement and Functional Performance," in which it was noted that district testing revealed that A.N. fell in the 2-3 percentile, or low range, on the math assessment, which meant that she scored better than 2-3% of her peers. (Tr. 264). On March 28, 2016, A.N. was diagnosed with dysthymic disorder. (Tr. 299).

In addition to this evidence, the ALJ also noted that non-examining agency pediatrician Dr. Mahmood found that A.N. had no limitation in this domain in August 2015. (Tr. 20, 56). The medical evidence supports the ALJ's determination that A.N. has marked impairment in acquiring and using information, but not extreme limitation. While she was diagnosed with learning disability, and scored in the normative low average range, there is no indication that A.N. is very seriously impaired in her ability to initiate, sustain, and complete tasks (as in her ability to complete an art assignment per the teacher's instructions), or that her test scores fell three standard deviations below the mean. As the ALJ discussed, this evidence does not suggest extreme limitation.

The teacher questionnaires discussed in the decision also support the ALJ's decision. A.N.'s teacher, Jennifer Pagel, completed a questionnaire in July 2015, rating A.N.'s abilities within each of the six domains. Ms. Pagel would rate A.N. on a scale of 1 to 5, with 1 being no problem, and 5 being a very serious problem. (Exhibit 4E). In the July questionnaire, in this domain, the majority of the ratings were a 3, or "an obvious problem." (Tr. 147). In the sub-areas of providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions, Ms. Pagel indicated that A.N. had a very slight problem. Ms. Pagel further indicated that, due to A.N.'s hearing and visual impairments, it is difficult for her to acquire information

16

in classroom lectures and discussions, and that comprehension was negatively impacted by her hearing impairment. (*Id.*).

In a September 2016 questionnaire filled out by Melanie Maxwell-Staniberg, a person who never worked with or saw A.N. (Tr. 170), from Denby High School, A.N. was found to have more problems in acquiring and using information. Ms. Maxwell-Staniberg indicated that A.N. had a very serious problem comprehending oral instructions, understanding school and content vocabulary, and reading and comprehending written material. (Tr. 171). She also noted a serious problem comprehending and doing math problems, learning new material, and recalling and applying previously learned material.

Ms. Pagel provided another questionnaire in October 2016. Ms. Pagel noted that A.N. was reading at a 1.9 grade level, doing math at a 4.2 grade level, and her written language was at a 4.0 grade level. (Tr. 187). Thus, Ms. Pagel understood A.N.'s academic struggles and limitations when completing this form. In the relevant domain, Ms. Pagel indicated that A.N. had a serious problem recalling and applying previously learned material and applying problem-solving skills in class discussions. (Tr. 188). In all other categories, Ms. Pagel indicated that A.N. had either an obvious problem or a slight problem. Never did she rate A.N. as having a very serious problem. Ms. Pagel added that A.N.'s hearing impairment made oral

17

comprehension difficult, but that once directions were given, A.N. has normal processing speed.

In determining that A.N. has marked limitation in this domain, the ALJ considered the evidence discussed above and A.N.'s hearing testimony. At the hearing, A.N. testified that she sometimes likes to read, can tell time, can repeat stories she's heard, can explain why she did something, can answer the telephone and deliver a message, can count money, can read street signs, is able to express her own opinions, and understands oral instructions if given close up. (Tr. 38-39, 40). She sometimes has issues adding and subtracting and would have to use a calculator, but she knows her multiplication tables, and works with fractions and decimal points. (Tr. 39). The fact that A.N. can complete all these tasks, but has serious problems as indicated by her teacher Ms. Pagel, supports the ALJ's determination that A.N. has marked, but not extreme, impairment in this domain. Plaintiff points to A.N.'s low grade-level reading and math abilities and normative low average test scores to support the position that A.N. is markedly impaired. And, it is true that Ms. Maxwell-Staniberg noted very serious impairment in three areas. However, as noted earlier, "[t]he Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky*, 35 F.3d at 1035. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court

interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The medical and other evidence, i.e. the questionnaires completed by A.N.'s own teacher Ms. Pagel, provide substantial evidence in support of the ALJ's decision. The undersigned concludes that the ALJ's decision that A.N. has marked limitation in acquiring and using information is within the "zone of choice" and is supported by substantial evidence, and thus must be affirmed. Having a marked impairment certainly does not mean that the claimant is unimpaired, but it also does not necessarily mean, as plaintiff's argument suggests, that a claimant is "extremely" impaired in a particular domain.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 16, 2019     s/Stephanie Dawkins Davis
                        Stephanie Dawkins Davis
                        United States Magistrate Judge